## PALM BEACH GARDENS COMMUNITY HOSPITAL, INC. v McANLIS

Case No. M-84-1196-C

County Court, Palm Beach County

July 10, 1987

### APPEARANCES OF COUNSEL

Cheryl Levin, Bacen & Kaplan, P.A., for plaintiff.

Barbara McAnlis and Theodore McAnlis, pro se.

### OPINION OF THE COURT

KATHLEEN J. KROLL, County Judge.

After a long history of numerous discovery problems, this case came to trial before the Court on October 28, 1986. Cheryl Levin, Esquire from Bacen & Kaplan, P.A. appeared for Plaintiff, Palm Beach Gardens Community Hospital, Inc., a Florida corporation and Defendants, Barbara McAnlis and Theodore McAnlis, her husband, ap-

peared pro se. Plaintiff sued Defendants for $1,569.00 plus interest and court costs claiming Defendant, Barbara McAnlis was a patient in Plaintiff's hospital and received treatment for which Defendants never paid. Defendant agreed that the treatment had been given and that they were satisfied with the quality of the treatment. However, they denied any money was due Plaintiff. They claimed Plaintiff overcharged by use of mark-ups and counterclaimed that Plaintiff thus owed Defendants $1,013.50.

The Court heard testimony of several witnesses, reviewed documents in evidence and heard argument of counsel and parties. The Court makes the following findings:

## FACTS

1. Defendant Barbara McAnlis was admitted to a hospital, owned by Plaintiff, Palm Beach Gardens Community Hospital, Inc., on February 16, 1983 and discharged on February 18, 1983. The total bill for that admission was originally $1,752.90. A second admission occurred on February 20, 1983 with a discharge date of February 25, 1983. The total amount of that bill originally was $2,872.10.

2. On February 18, 1983 Defendant Theodore McAnlis paid $700.00 and $2,900.00 to Plaintiff for services rendered to his wife. On February 20, 1983 he paid $600.00.

3. No testimony was presented that the performance of services by Plaintiff's employees was negligent.

4. Plaintiff's witnesses argued the high costs were necessary to cover handling and "behind the scene" charges for the hospital.

5. Defendants base their defense and counterclaim on "grossly inflated charges for services." Defendants testified they had called hospital supply firms in the area and found many examples of overcharging. For example:

(a) Busse #719 suture removal kit, consisting of a pair of plastic tweezers and a pair of scissors fashioned from wire was priced for hospitals at $78.30 in case lots of 100, or $0.78 each. Plaintiff charged patient-defendant $17.00 for one kit, representing a mark-up of 2,179% over cost.

(b) A typical shave prep kit consisting of a disposable razor and soap was priced for hospitals at $68.70 in case lots of 50 or $1.37 each. Plaintiff charged patient-defendant $15.50 for one kit, representing a mark-up of 1,131% over cost.

(c) Disposal gowns and drapes, consisting of sets of two paper gowns and paper drapes for surgery, are priced for hospitals at $160.00 in

2

case lots of 32, or $5.00 per set. Plaintiff charged patient-defendant $36.00 for two gowns plus $26.00 for one drape, making a total of $62.00 for one set, representing a mark-up of 1,240% over cost.

6. Defendants testified they could not be sure which items listed on the bill in evidence had been actually provided to Defendant Barbara McAnlis in the hospital as neither Defendant kept a running list of items used nor was Defendant Barbara McAnlis mindful of the services and items rendered to her during her illness.

7. Minus the items deleted on the bill due to an internal audit by the hospital, continuous discovery violations by Plaintiff and deductions for the payments made by Defendants to Plaintiff, Plaintiff in closing argument alleged yet due and owing was a reduced figure of $477.40.

8. Defendants claimed Plaintiff owed them $82.50 due to mark-ups on items.

### CONCLUSIONS OF LAW

The Court found this a remarkable case. It epitomized the common view of the modern patient/hospital relationship — "David meets Goliath." A sick and, therefore, vulnerable patient is at the mercy of an institution's seemingly unregulated system of fees. A consumer who takes his automobile to be repaired has more apparent rights. At least there, written estimates are required and disclosure is clearly regulated. Once "incarcerated" in a hospital what options does an ill patient have but to agree to pay for every piece of gauze, paper and plastic hospital personnel say was used? Once well, how does the ex-patient or her family attack the validity of the itemized bill?

This Court finds Defendants in this case did an admirable job of fighting bureaucracy. The Court was presented with a line by line analysis of the hospital bill. Plaintiffs justified their expenses by testimony from hospital office personnel indicating the items were similarly priced at other local hospitals.

The contract between the hospital and patient in this case is a contract implied in fact. A contract implied in fact is an agreement inferred from the conduct of the parties. 17 Am.Jur. 2d "Contracts" Section 3 (1964). Where a Court finds a contract implied in fact, the liability imposed is purely contractual, arising from the interpretation of the parties' acts and conduct. The measure of Plaintiff's damages is the reasonable value of the work performed, the market value of the materials furnished, and reimbursement for other money expended in performing. *Dean v. Blank,* 267 So.2d at 671; 17 Am.Jur. 2d "Contracts" at Section 4.

3

Although the contract is clearly seen between the Defendant Barbara McAnlis and the Plaintiff, such a contract also existed between Defendant Theodore McAnlis and Plaintiff. The common-law doctrine of necessaries makes clear the liability of a husband for his wife's hospital bill. *See, Shands Teaching Hospital and Clinics, Inc. v. Smith*, 497 So.2d 644 (1986). However, a husband's obligation is to pay only the reasonable charges. *Mercy Hospital, Inc. v. Carr*, 297 So.2d 598 (3d DCA 1974). *See, Hospital Board of Directors of Lee County d/b/a Lee Memorial Hospital v. Durkis*, 426 So.2d 50 (2d DCA 1982).

This Court finds the measure for reasonableness is not based on what other hospitals charge in the community. Such a standard would not recognize nor encourage competition in the health care marketplace. Rather, it is based on the common market value of the materials furnished. The Court finds mark-ups of 1,000 to 2,000% outrageous.

Plaintiff argued the cost was due to the necessity for additional personnel in dealing with these items in a hospital: someone to order the item; someone to stock the item; the technicians to move the items; and the educated nurses to use the items. However, one cannot forget there is also a hospital room charge. In this case the room was well over $100.00 per night. Most hotels charging this rate have disposal razor and soap included in the charge. For a hospital to be allowed to charge $15.50 for such items is unjust. As Plaintiff never rebutted Defendant's testimony as to prices by competent evidence, the greater weight of the evidence supports Defendant's estimate of value. Plaintiff has received a reasonable sum for their services. Accordingly, it is

ORDERED AND ADJUDGED that Plaintiff, PALM BEACH GARDENS COMMUNITY HOSPITAL, INC., take nothing by this action and that Defendants, BARBARA McANLIS and THEODORE McANLIS go hence without day.

DONE AND ORDERED in West Palm Beach, Florida, this 10th day of July, 1987.